IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TERESA J. SCOTT,                              )
                                             )
                                             )
            Plaintiff,                        )
                                             )
      v.                                      )        CIVIL ACTION NO. 5:21-cv-239 (MTT)
                                             )
MACON-BIBB COUNTY, GA, *et al.*,              )
                                             )
                                             )
            Defendants.                       )
_____)

## ORDER

Plaintiff Teresa J. Scott brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 based on alleged racial discrimination by Defendants Macon-Bibb County, Georgia, Andrea Crutchfield, and Jody Claborn.  Doc. 45.  The defendants move to dismiss Scott's complaint.  Docs. 38; 46.  For the reasons that follow, the defendants' motions (Docs. 38; 46) are **GRANTED in part and DENIED in part**.

## I. BACKGROUND

Scott, "a black female, is … employed as an Appraiser II in Defendant [Macon-Bibb County]'s Board of Tax Assessors' Personal Property Division."  Doc. 45 ¶ 10.  Scott's allegations of discrimination center around the defendants' failure to reclassify her to the Appraiser III position.  *Id*. ¶¶ 99-109.

"According to [Macon-Bibb County]'s Board of Tax Assessors' personnel policies, an Appraiser I, Appraiser II, or Appraiser III is eligible for reclassification, or promotion,

upon their successful completion of the respective prerequisites for the position."  *Id*. ¶

20.  The qualifications of an Appraiser III include the following:

> (1) be not less than twenty-one (21) years of age;
> (2) hold a high school diploma or its equivalent;
> (3) have the ability to correctly apply the three approaches to valuation in appraising properties within his jurisdiction;
> (4) have the ability to organize and direct the activities of subordinate personnel;
> (5) have the ability to perform all phases of mass appraisal and revaluation work within his jurisdiction including the ability to develop pricing and valuation schedules for the valuation of all land, improvements and personal property[;] …
> [and (6)] successfully complete an examination approved by the Revenue Commissioner.

Ga. Comp. R. & Regs. 560-11-2-.25(1)(c), (2) (2016); *see also* Doc. 45 ¶¶ 23, 47, 95,

96.  According to Scott, "[w]hile a promotion is not automatic, there need not be a

vacancy in order to be considered; rather, supervisors merely have to make a

recommendation, and employees are often promoted within months of meeting the

qualifications for the position."  Doc. 45 ¶ 21.

Scott passed the Appraiser I and Appraiser II exams in July 2010.  *Id*. ¶¶ 25, 50.

Scott was subsequently reclassified to the Appraiser I position in 2012 and the

Appraiser II position in 2015.  *Id*. ¶¶ 46, 50.  After Scott passed the Appraiser III exam

on February 6, 2018, she became eligible for reclassification as Appraiser III.  *Id*. ¶¶ 97-

100.  In February 2020, Scott's supervisor, Desiree Murray, recommended Scott for

reclassification.  *Id*. ¶ 102.  Claborn, the Deputy Chief Appraiser, denied the request.  *Id*.

¶ 103.  In response, Scott filed a charge of racial discrimination with the Equal

Employment Opportunity Commission ("EEOC") on August 19, 2020.  Doc. 1-2.  The

charge of discrimination alleged the following:

> On or about February 20, 2020, my Supervisor recommended me for reclassification as an Appraisal [sic] III.  On February 25, 2020, the

reclassification was denied.  As of today, no reason was given for the denial.
I believe that I have been discriminated against because of my race (African
American), in violation of Title VII of the Civil Rights Act of 1964, as
amended.

*Id*.  On April 15, 2021, the EEOC dismissed Scott's charge and issued a right-to-sue

letter providing 90 days for Scott to file suit.[1]  Doc. 1-3.  After receiving the right-to-sue

letter, Scott timely filed a pro se complaint on July 15, 2021.  Doc. 1.[2]

      Scott retained counsel in late August 2021, but counsel did not timely serve

Scott's original complaint because he did not read Federal Rule of Civil Procedure 4.

Doc. 11 at 2-3.  On November 5, 2021, the Court ordered Scott to show cause why the

original complaint should not be dismissed for failure to serve.  Doc. 5.  Before filing a

response to the show cause order, Scott's counsel filed, without leave of Court, a first

amended complaint on November 17, 2021.  Doc. 6.  The first amended complaint

added new defendants and additional claims well beyond the scope of Scott's EEOC

charge.  *Compare* Doc. 1-2 *with* Doc. 6 ¶¶ 119-22, 149-50, 161.  Most notably, the

improperly filed first amended complaint alleged the defendants violated Title VII when

they failed to timely reclassify Scott to the Appraiser I and Appraiser II positions.  Doc. 6

¶¶ 119-22, 149-50, 161.  Scott then filed a response to the show cause order on

November 19, 2021.  Doc. 11.

      The defendants answered the improperly filed first amended complaint and

moved to dismiss.  Docs. 15; 16.  Additionally, the defendants argued the original

complaint should be dismissed for failure to serve.  Doc. 19 at 3-5.  The Court convened

a hearing on August 8, 2022 to clarify the case's procedural posture and the scope of

---

[1] The right-to-sue letter was postmarked April 17, 2021.  Doc. 1-4.

[2] The complaint included the right-to-sue letter and the EEOC charge of discrimination.  Docs. 1-2; 1-3.

Scott's Title VII claims.  Doc. 33.  At the hearing, it became clear that although Scott was eligible for the Appraiser III position in 2018, she was not denied that position until February 2020.  *Id*.; Doc. 42 at 13:3-14:6.  Furthermore, Scott acknowledged in her briefing on the defendants' motion to dismiss that "the crux of [her] claims are that Defendants have continually refused to reclassify and/or promote her [to the Appraiser III position] since she became eligible in 2018."  Doc. 18 at 9.  Thus, Scott's improperly filed first amended complaint, which included allegations that the defendants violated Title VII when they failed to timely reclassify her to the Appraiser I and Appraiser II positions, improperly expanded the scope of Scott's charge of discrimination and contradicted Scott's admissions that her claims were limited to the February 2020 failure to reclassify her to the Appraiser III position.

In an effort to bring some clarity to the mess created by Scott's counsel by his failure to serve the original complaint and filing, without leave, an amended complaint attempting to expand the scope of Scott's claims, the Court allowed Scott to amend her original complaint consistent with her charge of discrimination and counsel's admissions.  Doc. 34 at 9.  In other words, the Court granted leave to amend to allege fully her claims arising from the February 25, 2020 failure to reclassify.  Additionally, the Court found that, despite the lack of good cause, an extension of time to serve the original complaint was warranted.  *Id*. at 8.

Scott filed her amended complaint, denominated as her "First Amended Complaint," on August 19, 2022.  Doc. 35.  Contrary to the Court's order and counsel's admissions, Scott's first amended complaint once again attempted to assert claims

arising from the defendants' failure to reclassify her to the Appraiser I and Appraiser II positions after she passed the requisite exams in 2010.  *Id.* ¶¶ 123, 138, 139.

The Court ordered Scott's counsel to order the transcript of the August 8, 2022 hearing and to show cause why Scott should not be sanctioned and the first amended complaint struck for failure to comply with the Court's instructions.  Doc. 41.  Scott responded to the show cause order with a proposed "Second Amended Complaint" on October 18, 2022.  Doc. 43-1. The proposed second amended complaint removed problematic paragraphs identified in the Court's show cause order but inserted new offending paragraphs that the Court missed.  *Id*.  Specifically, Scott alleged a Title VII pay discrimination claim, which had not been included in her EEOC charge, based on the defendants' delay in reclassifying her to the Appraiser I and Appraiser II positions.[3] *Id*. ¶¶ 141-43.  Because it missed Scott's counsel's latest effort to exceed the scope of the Court's order granting leave to amend, the Court allowed Scott to file her proposed second amended complaint.  Doc. 44.

Scott's second amended complaint alleges claims for race discrimination under Title VII (Count 1), pay discrimination under Title VII (Count 2), race discrimination under § 1981 (Count 3), and race discrimination under § 1983 (Count 4).  Doc. 45.  The defendants move to dismiss again arguing (1) Scott's complaint is a shotgun pleading; (2) Scott's Title VII claims are untimely; (3) Scott failed to exhaust her administrative

---

[3] Nothing prevented Scott from moving to amend her complaint to add additional claims.  *See* Doc. 50 at 6 ("All motions seeking to amend the pleadings or to join parties must be filed
no later than January 30, 2023.").  But during the hearing and briefing before the Court, Scott admitted that her Title VII claims were based only on the February 2020 failure to reclassify her to the Appraiser III position.  Docs. 18 at 9; 42 at 13:3-14:6.  And while Scott's counsel sought leave to add Macon-Bibb County Board of Tax Assessors, Crutchfield, and Claborn as defendants, he never sought leave to add claims outside the scope of Scott's EEOC charge.  Doc. 21 at 4.

remedies; and (4) Scott failed to establish a *prima facie* case of race discrimination.
Docs. 38-1; 46-1.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (cleaned up). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may

dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

### III. DISCUSSION

**A.  Scott's complaint, while poorly drafted, is not a shotgun pleading.**

The defendants first argue Scott's complaint should be dismissed as a "shotgun" pleading because "(1) each count adopts all of the preceding factual allegations; (2) it consists largely of conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; and (3) there are multiple claims against multiple defendants without specifying which defendant is responsible for which act."  Doc. 46-1 at 7 (internal quotations and citations omitted).  The Eleventh Circuit has described a shotgun pleading as one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996).  All of Scott's claims are based on a common factual scenario and Scott identifies which defendants are liable in the heading of each claim.  Therefore, it is possible to determine which allegations of fact are intended to support which claims for relief, and dismissal on this ground is not warranted.

However, this is hardly an endorsement of Scott's counsel's pleading methods and tactics.  The Court has again and again struggled to make sense of Scott's counsel's opaque and confusing pleadings.  As explained in the hearing convened to clean up the procedural mess created by Scott's counsel's mistakes, the Court cannot understand why a lawyer representing a plaintiff on a contingent fee basis would think it

wise to create the havoc and confusion Scott's counsel almost invariably creates with his pleadings.

Here though, counsel's transgressions go beyond inept pleading.  Specifically, he continues in his efforts, without leave of court, to allege liability based on the defendants' delay in reclassifying Scott to the Appraiser I and Appraiser II positions. *See* Docs. 6; 35; 45.  Remedial action is necessary.

**B.  Scott claims arising from the defendants' alleged failure to timely reclassify her to the Appraiser III position are not time barred and Scott exhausted her administrative remedies.**

*1. The 180-day requirement*

Before bringing a Title VII claim, a plaintiff must file a "charge of discrimination" with the EEOC within 180 days of the discriminatory act.  42 U.S.C. § 2000e-5(e)(1); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003).  Claims in a subsequent lawsuit are typically limited to the scope of the EEOC charge.  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).  While claims that "amplify, clarify, or more clearly focus the allegations in the EEOC complaint" are allowed, "allegations of new acts of discrimination are inappropriate."  *Id.* at 1279-80 (internal quotation marks and citation omitted).  However, "the scope of an EEOC complaint should not be strictly interpreted," and courts should be "extremely reluctant to allow procedural technicalities to bar claims."  *Id.* at 1280 (internal quotation marks and citation omitted).  "As long as allegations in the judicial complaint and proof are 'reasonably related' to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them."  *Ray v. Freeman*, 626 F.2d 439, 443

(5th Cir. 1980) (citation omitted).[4]  Furthermore, while a plaintiff cannot use time barred

acts "for the purposes of liability," these same acts can serve as "background evidence."

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).

Scott's EEOC charge states that the alleged discrimination took place between

February 25, 2020 and August 17, 2020, when Scott learned that the defendants

decided not to reclassify her as an Appraiser III.  Doc. 1-2.  Scott acknowledged in her

briefing before the Court and during the August 8, 2022 hearing that her Title VII claim

was based on the defendants' failure to reclassify her to the Appraiser III position.

Docs. 18 at 9; 42 at 13:3-14:6.  As a result, the scope of Scott's claims under Title VII is

limited to the defendants' failure to reclassify her as an Appraiser III.

The defendants claim that the second amended complaint impermissibly

expands the scope of Scott's charge of discrimination.  Doc. 46-1 at 11.  With one

exception, the defendants are incorrect.  To the extent that Scott alleges discriminatory

acts prior to her eligibility for the Appraiser III position as "background evidence," these

allegations are consistent with the Supreme Court's instructions in *Morgan*.[5]  536 U.S.

at 113-14.

However, Scott's allegations in her pay discrimination claim (Count 2) are beyond

the scope of her charge of discrimination and she did not request, and has not been

---

[4] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

[5] For example, Scott claims the defendants required her to use personal leave to take job-related exams and that the defendants made comments suggesting that persons of color were incapable of serving as appraisers.  Doc. 45 ¶¶ 45, 67-68.  Scott claims these events, among others, "will prove that Defendant's stated reasons are pretextual and were indeed motivated by Plaintiff's race."  *Id.* ¶ 131.  Although these events are not actionable because they occurred years before Scott filed her charge of discrimination, Scott has permissibly used them as background evidence to allege pretext.  *See Morgan*, 536 U.S. at 113-14.

granted, leave to amend her original complaint to assert such a claim.  *Id*.; Doc. 45 ¶¶ 141-43.  Scott alleges that "[d]efendant's delay in previously reclassifying [Scott] to Appraiser I and Appraiser II once she became eligible for such promotion, has caused [Scott] to continue to receive less compensation than she otherwise would have been entitled."  Doc. 45 ¶ 142.  But Scott was reclassified as an Appraiser I in 2012 and Appraiser II in 2015—acts that occurred years before Scott filed a charge of discrimination with the EEOC in 2020.  Docs. 1-2; 45 ¶¶ 25, 50.

Relying on discrete discriminatory acts that occurred years before the EEOC charge is improper.  Even if Scott had a legal basis for reviving those stale claims, she has not requested leave to assert those claims in this action.[6]  Accordingly, paragraphs 141, 142, and 143 are struck from the second amended complaint.  Doc. 45 ¶¶ 141-43.  This is the second time Scott's counsel has disregarded the Court's order to comply with his admission that Scott's Title VII claims were based only on the defendants' failure to reclassify her to the Appraiser III position.  Docs. 34; 41; 42.  If the defendants have incurred expenses because of Scott's counsel's actions, they may file an appropriate motion seeking sanctions.

*2. The 90-day requirement*

A plaintiff must file her complaint within 90 days of receiving her right-to-sue letter from the EEOC in order to maintain a claim pursuant to Title VII.  42 U.S.C. § 2000e-5(f)(1); *Green v. Union Foundry Co.*, 281 F.3d 1231-33, 1233 (11th Cir. 2002).  Here, Scott filed her original complaint on July 15, 2021—89 days after she received the right-to-sue letter.  Docs. 1; 1-4.  Nevertheless, the defendants argue that by filing, but not

---

[6] As noted, Scott could have moved for leave to assert those claims.  *See* footnote 3.  Scott's counsel suggested he would move to amend.  Doc. 45 at 25 n.1.  He never did.

serving, the original complaint, Scott failed to "commence" her lawsuit within the 90-day statute of limitations.  Doc. 46-1 at 11-13.  The Court is unpersuaded.  The defendants acknowledged that the Court has the "discretion … to extend the time for service of process even in the absence of a showing of good cause."  Doc. 19 at 5 (quoting *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005)).  The Court exercised that discretion when it granted Scott an extension of time to effectuate service.  Doc. 34.  And the defendants do not cite any binding authority that an extension of time to effectuate service affects the 90-day statute of limitations under 42 U.S.C. § 2000e-5(f)(1).  Thus, Scott's failure to serve the defendants within 90 days of filing her complaint does not bar her Title VII claims.

The defendants cite three non-binding cases to support their argument that Scott was required to serve her complaint to comply with the 90-day requirement in 42 U.S.C. § 2000e-5(f)(1).  Doc. 46-1 at 11-13 (citing *Birge v. Delta Air Lines, Inc.*, 597 F. Supp. 448 (N.D. Ga. 1984); *Giner v. AllStars Ins. Partners, Inc.*, 2019 WL 6130772 (S.D. Fla. Nov. 19, 2019); *Cruz v. Louisiana ex rel. Dep't of Pub. Safety & Corr.*, 528 F.3d 375 (5th Cir. 2008)).  These cases are distinguishable from the facts here.

In *Birge*, the plaintiff only filed his right-to-sue letter and an affidavit informing the court that he *intended* to file a complaint.  597 F. Supp. at 449-50.  The court concluded that these documents were insufficient to commence a lawsuit because the documents did not outline the factual basis of the plaintiff's claim.  *Id.* at 456.  Here, Scott's original complaint included her charge of discrimination, which outlined the factual basis of her Title VII claim.  Doc. 1-2; *see also Judkins v. Beech Aircraft Corp.*, 745 F.2d 1330, 1332 (11th Cir. 1984).

In *Giner*, the plaintiff filed a complaint within 90 days of receiving her right-to-sue letter, but the complaint only asserted state law claims for sexual harassment, assault, and battery.  2019 WL 6130772, at *1-2.  The plaintiff filed an amended complaint 281 days after receiving the right-to-sue letter that asserted a Title VII claim for the first time. *Id*. at *2. The court denied the motion to amend, concluding that the defendant did not have notice of the Title VII claim because it was not asserted in the original complaint. By contrast, Scott's original complaint asserted a claim under Title VII.  Docs. 1 at 3-4; 1-2.

Finally, in *Cruz*, the plaintiff timely asserted a Title VII claim in her first complaint, but the complaint was dismissed for failure to serve.  528 F.3d at 377-78.  The Fifth Circuit concluded that the district court's dismissal of the plaintiff's first complaint "prevented the complaint from interrupting the prescriptive period." *Id*. at 378.  As a result, the plaintiff's second complaint, which was filed more than a year later in state court, was untimely. *Id*. at 378-79, 381.  But the Court here declined to dismiss Scott's original complaint for failure to timely serve.  Doc. 34.  Thus, there is no need to address whether a dismissed original complaint can toll the 90-day statute of limitations under 42 U.S.C. § 2000e-5(f)(1).

Accordingly, because Scott filed her complaint within 90 days of receiving her right-to-sue letter, Scott's Title VII claims are not time barred.

## C.  Scott has adequately alleged race discrimination claims under Title VII, § 1981, and § 1983.

According to the defendants, Scott's discrimination claims based on the defendants' decision not to reclassify her to the Appraiser III position warrant dismissal for failure to state a claim.  Doc. 46-1 at 13-18.  Specifically, the defendants appear to

argue dismissal is warranted because Scott failed to allege a *prima facie* case for race discrimination.  *See id*. at 13-15.  However, that is not the proper standard at the pleading stage.

As the Supreme Court made clear, pleading a *McDonnell Douglas prima facie* case is not necessary to survive a motion to dismiss.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.").  That is because the *prima facie* case under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement."  *Id*. at 510.  Thus, the correct inquiry in the context of a motion to dismiss is not whether Scott has alleged facts sufficient to make out a classic *McDonnell Douglas prima facie* case, but whether the complaint provides "enough factual matter (taken as true) to suggest" discrimination based on race.  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (internal quotation marks and citations omitted).  A complaint may not survive dismissal, however, if it consists "of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1271 (11th Cir. 2004).

Here, Scott has adequately alleged claims for race discrimination.  Scott is black and thus a member of a protected class; she met the qualifications for reclassification to the Appraiser III position, citing her successful completion of the Appraiser III exam and her supervisor's recommendation for reclassification; and the defendants "reclassified two other [white] employees as Appraiser III, both of whom were less qualified and less

experienced than [Scott]."  Doc. 45 ¶¶ 10, 79, 100-03.  The Court finds these facts sufficiently allege that race played some role in the defendants' decision not to reclassify Scott as an Appraiser III.[7]

Additionally, the defendants argue Scott "has not established any custom or official policy that was the moving force behind her alleged constitutional violations" and, therefore, fails to state a municipal liability claim against Macon-Bibb County.  Doc. 46-1 at 15-17.  "The Supreme Court has placed strict limitations on municipal liability under § [1981]."[8]  *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  "A county's liability under § [1981] may not be based on the doctrine of respondeat superior."  *Id*.  Instead, only when the county's "official policy" causes a constitutional violation may a county be held responsible.  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Scott can establish an official policy of Macon-Bibb County by showing "either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."  *Grech*, 335 F.3d at 1329.  "A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal

---

[7] The defendants argue, without citing any authority, that reclassification is not an adverse employment action.  Doc. 46-1 at 14-15.  But Scott alleges that the failure to reclassify an employee is an adverse employment action because reclassification affects "compensation, terms, conditions, or privileges of employment."  42 U.S.C. § 2000e-2(a)(1); Doc. 45 ¶ 137.  In any event, the Court cannot decide that issue on a motion to dismiss.

[8] Section 1983 is the conduit through which employees may bring § 1981 claims against state actors.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989) ("We hold that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.  Thus to prevail on his claim for damages against the school district, petitioner must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases.").  As a result, cases interpreting municipal liability under § 1983 are relevant for determining whether Scott alleged a § 1981 claim against Macon-Bibb County.

policy." *Id.* at 1330 n.6.  A single incident of allegedly unconstitutional conduct is generally not so pervasive as to be a custom or practice under which liability may be imposed upon a county.  *Id.*

Scott does not claim that Macon-Bibb County has an official policy permitting constitutional violations.  Rather, Scott claims that Macon-Bibb County had an unofficial policy of discriminating on the basis of race.  For example, Scott claims that Crutchfield and Claborn repeatedly delayed her reclassification but immediately reclassified white employees.  Doc. 45 ¶¶ 27, 41, 106.  And Scott cites two other instances where Crutchfield and Claborn promoted white employees to supervisory positions instead of qualified black applicants.  *Id.* ¶¶ 39-40, 78.  Scott also alleges she was required to use personal days to sit for appraiser qualification exams, while white employees were not required to use personal days.  *Id.* ¶¶ 67-68.  These allegations, at the motion to dismiss stage, are sufficient, barely, to plausibly allege an unofficial policy of discrimination.  *See, e.g.*, *Harper v. Pro. Prob. Servs. Inc.*, 976 F.3d 1236, 1244 n.10 (11th Cir. 2020) (holding that three plaintiffs sufficiently plead a municipal liability claim when the complaint alleged that the defendant violated the plaintiffs' constitutional rights and the defendants "typically" engaged in unconstitutional conduct); *Massa v. Sch. Bd. of Miami-Dade Cnty.*, 2016 WL 7494872, at *2 (S.D. Fla. Dec. 29, 2016) (denying the defendant's motion to dismiss the plaintiff's municipal liability claim where the plaintiff alleged two similar incidents of misconduct by the defendants).

Finally, the defendants assert that Claborn and Crutchfield are entitled to qualified immunity because "[f]ailing to 'reclassify' Plaintiff to an Appraiser III is not a violation of clearly established law."  Doc. 46-1 at 17.  The Court disagrees.  Scott

claims that the defendants denied her reclassification to the Appraiser III position because of her race.  Doc. 45 ¶¶ 107, 154.  And "[t]he Eleventh Circuit has long held that the right to be free from intentional workplace discrimination on account of race is clearly established."  *Anderson v. Sumter Cnty. Sch. Dist.*, 449 F. Supp. 3d 1329, 1343 (M.D. Ga. 2020) (citing *Johnson v. City of Fort Lauderdale, Fla.*, 126 F.3d 1372, 1378 (11th Cir. 1997)).  Thus, defendants Claborn and Crutchfield are not entitled to qualified immunity.

## IV. CONCLUSION

The defendants' motions (Docs. 38; 46) are **GRANTED in part and DENIED in part**.  Scott's claims under Title VII, § 1981, and § 1983 based on the failure to reclassify her to the Appraiser III position remain.  However, paragraphs 141, 142, and 143 are struck from the second amended complaint.  Doc. 45 ¶¶ 141-43.

**SO ORDERED**, this 8th day of March, 2023.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT